FILED

OCT 2 9 2019

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

# UNITED STATES DISTRICT COURT
## FOURTH DISTRICT COURT
### EASTERN DISTRICT OF NORTH CAROLINA
### RALEIGH, NORTH CAROLINA

Webster Douglas Williams, III )

v. )

Federal Bureau of Prisons Officers)
or the current individual in the )
position of the named individuals )
listed listed: Director Inch; )
Ian Connors, Administrator Nation-)
al Inmate Appeals; Assistant Dir- )
ector. Thomas R. Kane; Regional )
Director D.J. Harmon; Matthew W. )
Malady, proxy for D.J. Harmon; )
Butner, L.S.C.I. Warden Donna )
Smith; Butner L.S.C.I. Associate )
Warden Engle; Granville Unit )
Manager D. Willis; Case Manager )
Williams (Wake Unit); and all )
other Federal Bureau of Prisons )
Officials known henceforth as )
John and Jane Doe and Richard Roe,)
unknown representatives of the )
Federal Bureau of Prisons; the )
United States of America; each in )
their official capacity and as )
individuals, and all other named )
and unnamed individuals who share )
responsibility for the administra-)
tion of TRULINCS public messaging,)
it's policies, rules, procedures, )
policy statements, rules, and )
regulations pertaining thereto. )

Case No.: **5:19-CT-3316**

**CIVIL RIGHTS COMPLAINT PURSUANT TO 28 USCS § 1331; THE ADMINISTRATIVE PROCEDURES ACT 5 USCS §§ 702-706; THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT; THE RIGHT OF ACCESS TO THE COURTS GUARANTEED BY THE SIXTH AMEND-MENT; THE RIGHT TO COMMUNICATE WITH THE PUBLIC GUARANTEED BY THE FIRST AMENDMENT**

## JURISDICTION

1.    This Honorable Court has jurisdiction under 28 USCS § 1346(a)
(2), which states that the district courts shall have original
jurisdiction, concurrent with the United States Claims Court
[United States Court of Federal Claims], of:

> Any other civil action or claim against the United States, not exceeding
> $10,000.00 in amount, founded either upon the Constitution or any act
> of Congress or any regulation of an executive department or upon any
> express or implied contract with the United States, or for liquidated
> or unliquidated damages in cases not sounding in tort, except that the
> district courts shall not have jurisdiction of any civil action or claim
> against the United States for liquidated or unliquidated damages in
> cases not sounding in tort which are subject to sections 7104(b)(1) and
> 7107(a)(1) of title 41.

2.    This Honorable Court has supplemental jurisdiction under
28 USC § 1367 and jurisdiction is implied under 28 USC § 1331.

3.    5 USC § 702 waives sovereign immunity in nonstatutory review
of agency action under 28 USC § 1331 if equitable, rather than
monetary relief, is requested. **Jaffee v. United States**, 592 F.2d
712 (CA3, N.J., 1979). The Petitioner in the instant case seeks
equitable relief.

4.    Existance of jurisdiction implied duty to exercise it, and
that it's exercise might be onerous did not militate against that
implication. **Second Employers' Liability Cases**, 223 US 1, 56 L.
Ed. 327, 32 S.Ct. 169 (1912).

5.    28 USC § 1331 gives district courts jurisdiction to enter-
tain civil rights actions regarding federal questions. **Glover v
South Carolina**, 2016 U.S. Dist. LEXIS 186498.

2

## LIBERAL INTERPRETATION

6.   Petitioner brings this motion as a pro se litigant. A pro se pleading is held to less stringent standards than more formal documents drafted by attorneys. **Haines v. Kerner**, 404 US 519, 520, 92 S. Ct. 594 (1972); **Estelle v. Gamble**, 429 US 97, 97 S. Ct. 285 (1970). A pro se movant may be dismissed only when it appears that he can prove no set of facts that would entitle him to relief. **Erickson v. Pardus**, 551 US 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (4th Cir. 2007).

## COMPLAINT

7.   Now comes the Plaintiff, Webster Douglas Williams, III, an incarcerated federal inmate at Butner, N.C. Low Security Correctional Institute, with a civil rights complaint alleging that the defendants in this case, as individuals, entities, agencies, and representatives thereof, under color of law, administer Federal Bureau of Prisons (hereafter named as FBOP) Policy Statement 4500.12 in an incorrect, unjust, and prejudicial manner so as to improperly and capriciously deny the Plaintiff access to the TRULINCS public messaging system.

8.   The flawed interpretation of published policy 4500.12 un- reasonably deprives the plaintiff of the use of the extant system (used to communicate with outside entities), denying him equal opportunity to communicate with his family, friends, attorneys, legal advocates, businesses of interest, and religious entities enjoyed by other inmates. This denial is void of penological purpose, in violation of Policy Statement 4500.12 (hereafter referred to as PS 4500.12), forcing the Plaintiff to pay 300% greater in fees to originate expedited communications than other inmates (who are routinely granted access). Admittedly, the FBOP provides two other means to make such communications, albeit at the much higher expense of a phone call, or the sluggish, anachro- nistic U.S. Postal Service and suffer days of delay awaiting delivery. This essentially presents the Plaintiff with a

3

Case 5:19-ct-03316-BO    Document 1    Filed 10/29/19    Page 3 of 28

Hobson's Choice, i.e. suffer through the **delay** or substan-
tially increased costs to communicate.

9.    The denial renders the Plaintiff completely incapable of
communicating with most modern advertisers who have seen fit to
eliminate mailing addresses and non-toll-free telephone numbers*
from their advertising, leaving the Plaintiff with no alternative
means of communication. The denial also implicates the Plaintiff's
Sixth Amendment right of access to the courts, because the denial
obstructs the only method used by legal advocates for the
dissemination of legal update bulletins from legal advocates,
whose sole method of communication is through the medium of e-mail.
*(Inmates are prohibited from dialing toll-free phone numbers.)

10.   The reasons for denial are opaque and lack the detail required
by policy. Further, the reasons for denial vacillate, creating a
mercurial, duplicitous remedy process, impossible to address in a
straightforward and logical manner. Plaintiff holds a belief that
responsible parties realize he is eligible for access, but due to
prejudice and/or bias, FBOP staff intentionally manipulate policy,
making rational administrative remedy futile. Plaintiff has
completed the administrative remedy twice for this issue.

11.   "Prisoners have no First Amendment Constitutional right to
access e-mail." **Grayson v. FBOP**, 2012 U.S. Dist. LEXIS 13839, (4th
Cir. 2012). However, technology has supplanted the U.S. Postal
Service for delivery of text-based messages, being both faster
and less expensive. TRULINCS e-mail is electronically monitored
for content, making it safer for the public and staff. At a "low
security" FBOP installation, outgoing paper mail is unmonitored
pursuant to FBOP PS 5265.14/540.14(c)(1), which states:

> "Outgoing mail from a sentenced inmate in a minimum or low security level
> institution may be sealed by the inmate... and is sent out unopened and
> uninspected. Staff may open a sentenced inmate's outgoing general
> correspondence :
>
> > (i) If there is reason to believe it would interfere with the

4

orderly running of the institution, that it would be threatening to the recipient, or that it would facilitate criminal activity."

The Plaintiff seeks a ruling showing that current case law with respect to TRULINCS is outdated, and undermines and departs from contemporary standards. The Plaintiff seeks a ruling, consistent with the implementation of FBOP PS 4500.12, and modern norms, that where equipment facilitating TRULINCS public messaging is present, installed, and working, that only in extremely rare instances should a federal inmate be deprived of the use of this economical, speedy method of communications. It is time to embrace the contemporary norms and the future by extending First Amendment protections to TRULINCS public messaging unless an inmate:

"whose offense, conduct, or other personal history indicates a propensity to offend through the use of e-mail to contact a victim for the purpose of soliciting victims for criminal conduct." Statement by FBOP Asst. Director **Thomas Kane**, Assistant Director, FBOP, Sept. 13, 2010.

12. The court will please note that FBOP Butner, LSCI's own actions regarding their assertion that the Plaintiff:

"...jeopardizes the safety, security, orderly operation of the correctional facility, or the protection of the public or staff."

is refuted by the FBOP's own actions— that is, none of the Plaintiff's outgoing paper mail has ever been opened or inspected. It would be disingenuous for the Defendants to state they have any reason to believe that, if granted, the Plaintiff's access to TRULINCS could or would "jeopardize the safety, security, orderly operation of the correctional facility or the protection of the public or staff", or they would have been opening and inspecting the Plaintiff's outgoing U.S. Mail.

13. The Plaintiff's behavior during his 8 (eight) years of incarceration would not lead a person of reasonable judgement to believe that the Plaintiff could or would "jeopardize the safety, security, orderly operation of the correctional facility, or the protection

5

of the public or staff" if granted access to TRULINCS public messaging. Plaintiff merely seeks the privileges granted to other inmates, i.e., a speedy, less costly means of communicating with his family, friends, and others. Further, the plaintiff is a first-time elderly offender with an otherwise spotless record until the instant offense.

14. The Butner, LSCI Inmate Handbook, provided to all arriving inmates, dated "REVISED, NOVEMBER 2016", page 46, states:

"The Electronic Public Messaging is a lesser (sic) expensive and faster method of sending and receiving electronic messages." 

The published policy statement concerning TRULINCS also states:

PS 4500.12/14.1 (March 14, 2018) "The Trust Fund Limited Computer System (TRULINCS) provides inmates with a computer system that **does not** jeopardize the safety, security, orderly operation of the correctional facility, or the protection of the public or staff."

By denying the Plaintiff access to TRULINCS public messaging, the Defendants show an implied intent to inflict additional financial punishment over and above the Plaintiff's court-ordered sentence, causing adverse effect because the Plaintiff is forced to pay a greater amount to initiate routine communications than other inmates who have been granted TRULINCS access.

15. The entire text of Assistant Director Thomas R. Kane's "Supplemental Guidance to All Wardens" statement, dated September 13, 2010, is attached as EXHIBIT A. The Plaintiff did **not** use e-mail **or** text messaging as part of his offense, and there is nothing in the record to suggest or infer that he did. It is clear that, based on the published Rules and Regulations (PS 4500.12) that the Plaintiff should be granted TRULINCS public messaging access. Assistant Director Kane's memorandum was published by the FBOP amending and superceding policy 5265.13, and was incorporated into PS 4500.12, however, Butner, LSCI, which is **not** a CMU (Communications Managed Unit) carelessly and indifferently denied the Plaintiff access and failed to notify inmates of the superceding policy update.

6

## PLAINTIFF SEEKS A PROTECTIVE ORDER

16. The Plaintiff seeks an immediate temporary injunction and an order of protection prohibiting retaliatory transfer to other FBOP facilities consistent with the First Step Act requirement to house inmates within 500 road miles of home. This provision promotes rehabilitation through family visitation and interaction. There is no other medically-qualified FBOP institution within 500 road miles of Myrtle Beach, SC which comports with the medical care level required by the Plaintiff's serious medical conditions.

17. The Plaintiff suffers from:
   1) Essential Thrombocythemia- a very rare neoplasm (cancer) of the bone marrow.
   2) Stage 3 Chronic Kidney Disease.
   3) Bilateral pitting edema.
   4) Hypertension (high blood pressure)
   5) Spells of blindness.
   6) Anemia.
   7) Gout.
   8) Severe diverticulosis.
   9) Other serious health issues.

requiring frequent visits with medical specialists. Plaintiff is qualified for placement in, and is housed in, Low Security housing. Plaintiff has been at Butner, LSCI for the previous four years. It is unclear whether the Plaintiff is Care Level 3 or Care Level 4 due to conflicting reports in the Plaintiff's files.

18. Plaintiff has an exemplary conduct record, regularly takes and teaches ACE classes, has kept steady employment, and has only one disciplinary infraction which is currently under appeal because it violates the Americans with Disabilities Act. As an ACE instructor, the Plaintiff teaches useful trades to other inmates that they may implement upon their release, such as an electrical class and a proposed small engine class for which the Plaintiff has created a curriculum.

7

19. The FBOP has a history of retaliatory transfer (known as "deisel therapy" or "cartwheeling") by transferring inmates who initiate lawsuits against staff. Any transfer of the Plaintiff would place him further than 500 road miles from home, making family visits more difficult if not impossible, and would damage the Plaintiff's rehabilitative efforts, and cause the Plaintiff and his family burden and hardship. The reason any transfer would be greater than 500 miles is because of the Plaintiff's requirement for medical care consistent with his chronic illnesses, and the type of care required by the Plaintiff is only available at select FBOP facilities; all comparable medical FBOP facilities exceed the 500 mile limit expressed in the First Step Act.

20. Plaintiff therefore seeks an immediate temporary injunction and order, and ultimately a permanent, order of protection from retaliatory transfer. The Plaintiff cites:

**Washington v. FBOP**, 2018 U.S. Dist. LEXIS 198695 (4th Cir. 2018). Washington was granted an injunction prohibiting transfer from Butner due to medical reasons after he had been transferred as many as nine times for retaliatory reasons, preventing the completion of his administrative remedy and civil suit.

## HISTORY OF THE POLICY

21. The FBOP promulgates Agency Program Statements and Rules and Regulations, and binds and subjects prisoners assigned to Agency custody to compliance as a matter of law. The implementation of these policies exposes inmates to sanctions and punishments, sometimes increasing the severity of the punishment pronounced by the sentencing courts. The FBOP may suspend important personal liberties as a result of violations. Inmates violating Agency Rules, Regulations, and Policy Statements have a right to Due Process. Courts of Law consider violations of FBOP Policy Statements, Rules, and Regulations when deliberating upon criminal and civil issues occurring while an inmate is in FBOP custody. See **Himko v. English**, 2016 U.S. Dist. LEXIS 180814 (11th Cir. 2016), relying on PS 5265.13 and PS 4500.11.

22. From time to time, FBOP Policy Statements, Rules, and Regulations are changed, edited, deleted, updated, or otherwise modified, altered, or appended as necessary to remain temporally relevant. The instant case hinges on the adoption of such a modification to policy, which occurred on September 13, 2010, and again on March 14, 2018, to the policy concerning TRULINCS public messaging.

23. On June 12, 2010, the FBOP promulgated PS 5265.13, which denied TRULINCS public messaging access to all sex offenders. Three months later, on September 13, 2010, FBOP Assistant Director Thomas R. Kane wrote and disseminated a significant revocation of of PS 5265.13, permitting sex offenders who did **not** use e-mail or text messaging [electronic messaging] to obtain access to TRULINCS public messaging, leaving only a very narrow classification of inmates remaining who should be denied access.

> "...only inmates whose offense conduct indicates a propensity to offend through the use of electronic messaging should be considered for restriction. This does **not** include inmates who previously offended by exchanging computer data files or pornographic images (children or otherwise), insofar as TRULINCS electronic messaging does not provide that function." FBOP Assistant Director Thomas Kane, Sept. 13, 2010.

9

Assistant Director Kane's policy revision carved an affirmative path to TRULINCS access for sex offenders with one very narrow exceptions:

> "Only inmates whose current offense conduct or personal histories include using electronic messaging to solicit or accomplish offensive conduct with a victim should be restricted."

24. To further distill the essence of Assistant Director Kane's "Supplemental Guidance to All Wardens", he included that:

> "...inmates cannot be restricted from TRULINCS electronic messaging function simply based on a current or prior sex offense conviction."

25. Policy Statement 5265.13 was expunged and evolved into PS 4500.11 in April, 2016. Butner LSCI staff merged these two now expunged policies to create their own institutional supplement, however, Butner LSCI is not a "Communications Managed Unit", therefore, when the FBOP promulgated PS 4500.12 on March 14, 2018, it effectively became the new policy, expunging the now-outdated 5265.13 and 4500.11. PS 4500.12 incorporates Assistant Director Kane's directive permitting sex offenders access to TRULINCS public messaging, unless their offense conduct:

> "...indicates a propensity to offend through the use of electronic messaging."

26. Policy 4500.12 does permit staff to reasonably deny an inmate communication with victims, children being groomed for illicit purposes, predatory behavior, communications with other sex offenders, and specific contact with the general public which might cause a risk of sexually offensive behavior. This does not in any way authorize staff to completely deny sex offenders access, rather, it places a requirement on the permitted inmates to refrain from such acts under penalty of sanctions. Staff may selectively prohibit communications with specific e-mail addresses without barring access alltogether. With due deference to **Packingham v. North Carolina**, 198 L. Ed. 2d 275, 582 US ___, 137 S.Ct. 1730 (2017)

> The FBOP is permitted to enact rules that "prohibit a sex offender from... contacting a minor or... gathering information about a minor, as long as the rule does not completely prohibit otherwise lawful activity."

27. As of September 13, 2010, only two classes of inmates were required by policy to be restricted from TRULINCS public messaging:

> A) Any inmate who used e-mail or text messaging to contact a victim for the purpose of solicitation of offensive conduct.
>
> B) [Inmates who] jeopardize the safety, security, orderly operation of the correctional facility, or the protection of the public or staff.

P.S. 4500.12 states that these are the only inmates who:

> "...should be seriously considered for restriction."

The Plaintiff is affirmatively excluded from group A. Group B is administered in an entirely subjective and capricious manner without consideration of factual data.

28. However, P.S. 5212.07 provides a method to identify which inmates are in group B, which shows that the Plaintiff is also affirmatively excluded from that group as well. P.S. 5212.07 states:

> "In an effort to maintain a safe and orderly environment within it's institutions, the Bureau of Prisons operates Control Unit programs intended to place into a separate unit those inmates who are unable to function in a less restrictive environment without being a threat to others or to the orderly operation of the institution."

The Plaintiff is housed in general population, and is not in a "control unit" program. If the Plaintiff "jeopardized the safety, orderly operation of the correctional facility", he would not be permitted to be housed at a Low Security general population institution, such as Butner Low.

29. It cannot be truthfully said that the Plaintiff tangibly jeopardizes the safety, security, orderly operation of a correctional facility, or the protection of the public or staff. In the instant case, FBOP staff has denied TRULINCS public messaging access to a 60 year old first-time offender and retired career firefighter, a model inmate who simply seeks a more

11

economical means to maintain family contact, and wishes to have speedy text-based contact with his attorneys, legal advocates, friends, and businesses of interest for which there are no other means of contact. The Plaintiff certifies that he does not seek access for malevolent purposes.

## THE ADMINISTRATIVE REMEDY PROCESS IS FUTILE

30. Inmates not specified for denial as described in P.S. 4500.12/ 14.9 should be routinely granted access pursuant to policy and Assistant Director Kane's "Supplemental Guidance to All Wardens" issued on September 13, 2010. However, implementation of the policy has received widespread universal resistance from subordinate staff at the institutional, regional, and national levels. Bureau staff, with cabalistic motives, prejudicially manipulate policy and contrive means to violate Director Kane's guidance statement by refusing access. FBOP staff's misinterpretation of policy unreasonably denies many sex offenders access to the system. Asst. Director Kane's Guidance Statement is specifically worded so as to grant access to the broadest cross-section of sex offenders as possible. Staff routinely denies these inmates access based upon capricious, subjective reasoning, spuriously opining that the denied sex offenders pose some vague, ambiguous, unsubstantiated security risk to the institution, staff, and the public if granted access to the least-expensive, speediest, most contemporary means to communicate.

31. TRULINCS public messaging is undeniably safer for the institution and the public because it is electronically monitored for content, saving staff manpower and scarce resources. Denying access is counterintuitive.

32. When denial of access is appealed through Administrative Remedy, all levels of staff respond with pre-printed form letters and fail to conduct the required individualized meaningful re

12

review to determine if an inmate actually presents any security risk if granted access. Executive staff at the highest levels parrot subordinate staff responses to avoid being seen as undermining the authority of subordinates. The result is an impenetrable shield of government beaurocracy at it's worst, creating an entire class of inmates wrongfully denied TRULINCS public messaging to maintain family (and other) contact. The denial causes [the class] to unnecessarily expend hundreds of thousands of dollars each year to converse with their family (and others) by forcing these inmates to rely on telephone calls, a much more expensive alternative.

33. The denial prohibits contact with inmate advocates who inform inmates exclusively through the medium of e-mail concerning important legislation and statutory changes which an inmate could use to reduce their sentence or free themselves. The denial of access to TRULINCS public messaging effectively denies inmates their Sixth Amendment right of access to the courts by cutting off access to available legal materials. No alternative communications method exists to obtain this crucial information.

34. Bringing this complaint to staff attention is an exercise in futility. The Plaintiff was told by his case manager (in a nutshell) that:

"Changes in policy are not a reason to review your denial." See Exhibit B.

35. BOP staff misinterpret the policy (4500.12) as a whole, which permits capricious denial, allowing staff to eliminate access to almost all inmates with a sex offense conviction. The policy does not state that all inmates with an Adam Walsh assignment are to be denied access. An objective reading of the policy directs staff to examine inmates with an Adam Walsh assignment with additional scrutiny to see if they used electronic messaging to

13

contact a victim for the purpose of committing offensive conduct. An objective, non-biased interpretation of 4500.12/14.9 would only permit denial of inmates who used e-mail or texting as an element of their crime. Because staff improperly interprets this policy, they are effectively using a guillotine to select inmates for denial when a scalpel is prescribed.

36. Assistant Director Kane presciently predicted subordinate staff weaponizing now-expunged policy PS 5265.13 to wrongfully deny access to TRULINCS public messaging. He understood the policy could be weilded to issue subjective, capricious determinations to thwart access to sex offenders use of TRULINCS to maintain contact with their families and others, but staff continues to defend their unjustified denials in spite of Asst. Director Kane's explicit directive.

## THE PLAINTIFF STATES A CLAIM UPON WHICH
## THIS HONORABLE COURT MAY GRANT RELIEF

37. The Plaintiff has been denied access to TRULINCS public messaging in contradiction of FBOP Policy Statement 4500.12, in violation of the Equal Protection clause of the Fourteenth Amendment, in violation of the Due Process guaranteed by the Fifth and Fourteenth Amendments, and in violation of the Supplemental Guidance to All Wardens edict issued by FBOP Assistant Director Thomas Kane [issued September 13, 2010]. Agency Rules, Regulations, and Constitutional protections are reviewable for violations by a Court of Law under the Administrative Procedures Act, 5 USCS §§ 702-706. Defendants violate the Plaintiff's Sixth Amendment right of access to the courts, and chill plaintiff's free exercise of his First Amendment right to communicate freely with others in the absence of a comparable replacement means of communications. Most inmates are routinely granted access, while others are denied, creating a violation of the equal protection components of the Constitution.

14

38.  The Plaintiff was told by Butner LSCI staff that furnishing access to the telephone and U.S. Mail services provides adequate means of fulfilling the FBOP's duty to meet First Amendment requirements, however, contemporary communications standards do not merit such a narrow interpretation. Twenty years ago, this response may have been adequate, but this explanation is inconsistent with contemporary communications practices. Moore's Law states that:

"Technology doubles in speed and halves in cost every 24 to 36 months." What would have required extra staff to manually examine incoming and outgoing e-mails for violative content in 2010 now takes place immediately in real-time, electronically. Although the FBOP uses cutting-edge electronic content filtering, staff refuses to rely on the safe, extant technology to accomodate the 21st century's paradigm shift in communications.

39.  The term used in FBOP Policy Statement 4500.12 [seriously considered] in section 14.9 to determine who to deny access to is misapplied to refuse service to inmates who should be allowed to use the service. The intent is that extra scrutiny should be used to determine if there is a factual element present in an inmate's charged conduct that indicates that the inmate used e-mail or texting as an element of the inmate's instant offense, to contact a victim for the purpose of committing offensive conduct. If e-mail or text messaging was not used as part of the inmate's offense to contact a victim for the purpose of committing offensive conduct, then that inmate should be routinely granted access.

## THE PLAINTIFF'S POSITION IS SUPPORTED AS A MATTER OF LAW

40.  While:
"...Courts cannot lightly second guess a deliberate and informed determination by an Agency charged with administering Federal Prison policy."

15

**Abdul-Malik v. Hawk-Sawyer**, 403 F.3d 72, 76 (2nd Cir. 2005); **Taylor v. Sawyer**, 284 F.3d 1143, 1149 (9th Cir. 2002); **Barden v. Keohane**, 921 F.2d 476, 483 (3rd Cir. 1990); **Davis v. Johns**, 2011 U.S. Dist. LEXIS 108993 (4th Cir. 2011).

The Plaintiff alleges that no such deliberate or informed determination took place when Butner (and other) staff denied the Plaintiff TRULINCS public messaging access. Butner staff made a capricious decision to deny access and merely responded with a pre-written denial form, without conducting an individualized assessment of Plaintiff's likelihood of abusing TRULINCS e-mail if granted access. No deliberate or informed determination occurred.

41. FBOP Program Statements are utilized by the courts as authoritative. See:
> **United States v. Stewart**, 2009 U.S. Dist. LEXIS 20598 (4th Cir. 2009)
> **Hill v. Chapman**, 2008 U.S. Dist. LEXIS 52762 (4th Cir. 2008)
> **McKinnon v. Hayes**, 2007 U.S. Dist. LEXIS 99554 (4th Cir. 2007)
> **Cherry v. United States**, 2018 U.S. Dist. LEXIS 193204 (4th Cir. 2018)
> **Florencio Rosales-Mireles v. United States**, 201 L. Ed. 2d 376, 138 S. Ct. 1897 (2018)

42. The 11th Circuit District Court incorporated the text of FBOP Policy Statement 4500.11 in it's official findings in **Himko v. English**, 2016 U.S. Dist. LEXIS 180814 (11th Cir. 2016), however, the current policy (4500.12) **omits the text**:
> "....sex offenders should be seriously considered for restriction from TRULINCS."

This text was stricken from FBOP policy by Assistant Director Thomas R. Kane on September 13, 2010 in an official executive memorandum.

43. Plaintiff has been denied liberties enjoyed by other inmates. Plaintiff asserts that the term "similar" does not invite comparison to inmates charged under identical statutes, for that

Case 5:19-ct-03316-BO   Document 1   Filed 10/29/19   Page 16 of 28

requiresthe court to subject the Plaintiff to an insurmountable "scavenger hunt" across the entire Bureau of Prisons seeking other similarly charged inmates. The Plaintiff believes that the intent of the application of the Equal Protection clause of the Constitution only requires a loose interpretation of similarity:

    1) Plaintiff's showing that he is a prisoner in the custody of the Federal Bureau of Prisons;

    2) is charged with a sex offense;

    3) is not confined in a CMU (Communications Managed Unit);

    4) that he meets the requirements of PS 4500.12 to be permitted access.

is the proper application of "similarity" for Equal Protection purposes.

44. The improper and capricious interpretation of PS4500.12 subjects the Plaintiff to as much as 400% higher fees than similarly situated inmates to communicate with his family, friends, legal advocates, attorneys, and businesses of interest. To communicate by telephone is $3.15 per 15 minute call, while TRULINCS e-mail would reduce the cost to 75¢ per 15 minutes session. The barment could cost the Plaintiff thousands of dollars over his imprisonment more than other inmates to communicate with his family.

45. A determination that the Plaintiff poses some illusory jeopardy to the safety, security, orderly operation of the facility or the protection of the public to justify TRULINCS public messaging denial is not reflected in the Plaintiff's history. The Plaintiff is 61 years old, was a career firefighter for 20 years, a volunteer firefighter for 5 years, volunteered with the American Red Cross, his local volunteer rescue squad, was a phone patch operator for U.S. Army M.A.R.S., and is credited with saving two lives. He raised two families without incident, among other life accomplishments. The facts contradict a finding that the Plaintiff poses any security risk if granted TRULINCS e-mail privileges. The policy explicitly forbids the consideration of the sending or receipt of and/or exchange of pornography and data files, children or otherwise, as part of the criteria for granting access.

17

46. The Plaintiff has twice completed the Administrative Remedy Process for this issue, the most recent after being told by an unknown case manager from Butner FCI-1 who was filling in for the Plaintiff's assigned case manager that:

> "The rules have changed. It appears you are now eligible for TRULINCS public messaging access."

The Plaintiff was also told by his Unit Manager (D. Willis) in the presense of Plaintiff's Counselor (A. Williams) that he (Mr. Willis) had:

> "Recommended to the Warden (Donna K. Smith) that your TRULINCS public messaging access be approved."

47. On May 21, 2015, Plaintiff received a letter from **"My Federal Prison Consulant, LLC"**, Jack T. Donson, a former FBOP Case Manager with 23 years of service, and familiar with the Plaintiff's case, advising the Plaintiff to file Administrative Remedy to obtain access. The letter contained suggested verbage. Plaintiff did so without results.

48. FBOP staff stubbornly ignores published policy, including the mandate issued by Assistant Director Kane, which specifically provides a path to TRULINCS access for the Plaintiff and other inmates with sex offense charges with a very narrow exception that they may not have:

> "used electronic messaging to solicit a victim for the purpose of committing offensive conduct."

The refusal to grant the Plaintiff access violates 5 U.S.C. § 702 and 5 U.S.C. § 706, in addition to the Fifth and Fourteenth Amendment Constitutional guarantee of due process and equal protection of the law. The refusal fails to comply with published authoritative Agency policy and procedures, is in direct defiance of Assistant Director Kane's edict, and violates PS4500.12.

49. The denial chills the free expression of the Plaintiff's exercise of his First Amendment right to communicate freely with

18

members of his family and the public, which is a protected liberty interest. Without TRULINCS public messaging, the Plaintiff is:

"...completely prohibited from communicating with an enormous cross section of society, because of a rudimentary shift in the way society communicates." **Packingham v. North Carolina**, 137 S. Ct. 1730 (2018)

"Inmates have First Amendment Constitutional protection even if convicted and imprisoned." **O'Lone v. Estate of Shabazz**, 482 US 342, 348 (1987).

"There is a First Amendment right to communicate with persons outside of prison walls." **William H. Harrison v. Federal Bureau of Prisons**, 464 F. Supp. 2d 552 (4th Cir. 2006).

50. FBOP staff misinterpretation of Agency policy:
"Does not leave open adequate alternative means of communication because it completely prohibits [Plaintiff's] access to certain businesses of interest entirely, leaving no alternative means to contact them and no same or similar function exists." **Packingham v. North Carolina**, 137 S. Ct. 1730; 198 L. Ed. 2d 273; 2017 U.S. Dist. LEXIS 3871; 85 U.S. L.W. 4353; 26 Fla. Weekly Fed. S. 695; 66 Comm. Reg. (P&F) 1397; No. 15-1194, 777 S.E. at 747 (June 19, 2017)

51. An objective reading of PS4500.12 shows that most inmates with a Walsh Assignment are eligible for TRULINCS public messaging access. See PS4500.12/14.9(1) which **requires** staff to conduct a determination of inmates with a Walsh assignment to see if they:
"...pose a realistic threat before granting access."
The verbage used presupposes that all inmates should have access unless it has been determined that they used e-mail or texting to solicit a victim for the purpose of committing offensive conduct.

52. Contemporary business advertising practices omit all contact information except for a toll-free number and a website and/or e-mail address. Inmates are forbidden from dialing toll-free numbers, and do not have internet access. Denial of TRULINCS effectively prohibits an inmate from all means of contact with most businesses.

19

53.  It would be unjust to prohibit the Plaintiff from attempting to communicate with businesses based on a distorted view of the Plaintiff's criminal history. In this spirit, Assistant Director Kane's "Supplemental Guidance to All Wardens" statement is designed to inform staff that inmates such as the Plaintiff should be routinely granted access to TRULINCS public messaging.

54.  Admittedly, the Plaintiff concedes that he currently has no First Amendment right to e-mail, however, he seeks to have this Honorable Court implement First Amendment protections due to the ubiquitous proliferation of e-mail as the de-facto contemporary method of communications in the 21st century. The Plaintiff does not seek First Amendment protections for all inmates, rather, he seeks First Amendment protection for inmates consistent with FBOP PS 4500.12 in institutions which already have the supporting infrastructure in place to support e-mail, and that the FBOP be compelled to grant access to inmates who did not use electronic communications [described as e-mail or texting] to solicit or accomplish offensive conduct with a victim. Plaintiff also seeks the removal of ambiguous portions of FBOP PS 4500.12 that allow subjective opinions to effect the process of granting access.

55.  "Prisoners enjoy substantial First Amendment protections to communicate with outsiders." **Zimmerman v. Tribble**, 226 F.3d 568, 572 (7th Cir. 2000). However, without e-mail access, it is difficult to exercise this protected activity.

56.  Denying any inmate access to TRULINCS public messaging inhibits rehabilitation efforts and handicaps them upon release, rendering them less-equipped to deal with reality when they return to society.

57.  "It is well-established that, as a general rule, the government may not suppress lawful speech as the means to suppress unlawful speech." **Packingham v. North Carolina**, 198 L. Ed. 2d 273 at 275, 137 S. Ct. 1730 (2017).

20

58. "The assertion of a valid governmental interest cannot, in every context, be insulated from all Constitutional protections." **Stanley v. Georgia**, 394 US 557, 563, 89 S. Ct. 1243, 22 L. Ed. 2d 542 (1969).

59. "With one broad stroke, [North Carolina] bars access to what for many are the principal sources for knowing current events, checking ads for employment, speaking and listening in the modern public square, and otherwise exploring the vast realms of human thought and knowledge. Foreclosing access to [social media] altogether thus prevents users from engaging in the legitimate exercise of First Amendment rights. Even convicted criminals – and in some instances _especially_ convicted criminals – might receive legitimate benefits from these means for access to the world of ideas, particularly if they seek to reform and pursue lawful and rewarding lives." **Packingham v. North Carolina**, (supra), 198 L. Ed. 2d at 280–282.

60. It should not be misconstrued that the Plaintiff is seeking full internet access while in prison, or to access social media. The Plaintiff merely seeks access to (what is referred to in the inmate guide as):

"An economical means to maintain family contact."

61. A First Amendment right is meaningless if the Plaintiff is prevented from exercising that right. The Plaintiff also seeks to be able to contact nationally-recognized prisoner advocate groups such as "**FAMM**" (Families Against Mandatory Minimums), CURE, Jeremy Gordon, and LISA. These attorneys and prisoner advocates provide legal updates to federal inmates solely through the medium of e-mail. Barring the Plaintiff from access to these individuals and groups by denying him e-mail access impedes his access to the courts in violation of the Sixth Amendment.

62. "If an ordinance prohibiting First Amendment activities could be struck down because it covered all manner of protected, non-disruptive behavior, it follows with greater force that [the state] may not enact this complete bar to the exercise of First Amendment rights... integral

- 21

to the fabric of modern society and culture." **Packingham** (supra), 198 L. Ed. 2d at 282, citing **Board of Airport Commissioners of Los Angeles v. Jews for Jesus, Inc.,** 482 US 569, 96 L. Ed. 2d 500 (1987)

63. The mistaken application of the FBOP rule 4500.12 denying the Plaintiff TRULINCS e-mail access:

"Impermissibly creates a criminal prohibition of alarming breadth and extends well beyond the evils...[the FBOP]... seeks to combat." **Packingham** (supra) Id. at 401, 777 S.E. 2d at 754.

64. E-mail offers:

"relatively unlimited, low-cost capacity for communications of all kinds.. users can debate religion and politics with their friends and neighbors." **Reno v. ACLU**, 521 US 844 at 870.

65. "Users can petition their elected representatives and otherwise engage with them in a direct manner. Indeed, Governors in all 50 states and almost every member of Congress have set up accounts for this purpose." **Packingham,** (supra).

66. It should be assured that the FBOP is permitted to enact rules that:

"Prohibit a sex offender from... contacting a minor or... gathering information about a minor, so long as the rule does not completely prohibit otherwise lawful activity." **Packingham** (supra), 198 L. Ed. 2d 282 (2017).

67. The courts have permitted the FBOP to deny TRULINCS e-mail access in the past based on the perception that failing to do so would stress already scant human resources by using them to monitor TRULINCS communications. It is 2019. Monitoring is now automated, with violators being automatically reported and receiving appropriate sanctions, including removing them from the system. Monitoring for misuse no longer entails the use of human resources.

22

68.    Barring the Plaintiff from TRULINCS public messaging: "Arbitrarily burdens [the Plaintiff] by preventing a wide range of communication and expressive activity unrelated to [the FBOP] acheiving it's purported goal." **Packingham** (supra), 229 N.C. App. 293, 304, 748 S.E. 2d 146, 154 (2013).

69.    It cannot be said that the Plaintiff's TRULINCS public messaging access would:

"...jeopardize legitimate penological interests". **Gatch**, 2013 U.S. Dist. LEXIS 171940, 2013 WL 6405831 at *2.

because the plaintiff never used:

"computers as a conduit... for soliciting minors for sexual activity." Larson, 2015 U.S. Dist. LEXIS 169370, 2015 WL 9243812 at *3-*4.2.

70.    The Plaintiff believes that he is a member of a "suspect class" and that there are a number of "like situated inmates", however, as the Plaintiff describes in line item #43 on page 16, due to the Plaintiff being a prisoner himself, he is unable to conduct the required survey across the entire Federal Bureau of Prisons to seek out other effected inmates. In many cases, inmates prefer not to be involved in this issue for fear of being "outed" as a sex offender, however, the Plaintiff is aware of a number of inmates in the same position as himself.

71.    In the case of **Jed Philip Larson v. Eddy M. Mejia**, 2015 U.S. Dist. LEXIS 169370 (5th Dist. 2015), the Honorable Fifth District Court Judge David L. Horan states, citing Bureau of Prisons policy that:

"Inmates may not be excluded from TRULINCS access because of broad and general characterizations of their criminal record."

and:

"...denying an inmate TRULINCS access must be based on that inmate's personal history or behavior."

Judge Horan then cites expunged policy:

"...criminal history that would justify exclusion would include "possession/distribution of child pornography through

23

the internet or other means, or using computers/email/Internet or other communications method as a conduit for committing illegal activities." This policy is no longer included in FBOP policy, and the act of exchanging pornographic images, through e-mail or the internet, is no longer a sufficient barrier to deny an inmate TRULINCS public messaging access. Nonetheless, the Plaintiff denies that he ever contacted any minor for the purpose of solicitation of any unlawful act, and further, that he never exchanged any pornographic images by the use of e-mail or text messaging, and the Plaintiff's record of offense does not accuse him of such acts.

72. "Review is not available under 5 USCS § 701 'if the statute is so drawn so that a court would have no meaningful standard against which to judge that agency's exercise of discretion'". **Ellison v. Connor**, 153 F.3d 247, 251 (5th Cir. 1998).

The Plaintiff alleges that agency policy, 4500.12/14.9 is worded adequately to permit a person of ordinary reason to make a determination that the Federal Bureau of Prisons is capriciously and arbitrarily denying him TRULINCS public messaging access in violation of internal policy. The Plaintiff believes this is true because there is no"

"absence of specific guidelines of appropriate conduct by BOP officials in administering these duties ..."

and leaves no judgement or choice to BOP officials but to grant the Plaintiff access. Because there **is** a specific guideline, the Administrative Procedures Act applies.

73. It is a distinct probability that access to TRULINCS public messaging could effect the duration of one's sentence because there exists no alternate means available to access certain legal bulletins advising inmates of key actions by Congress which inmates have no other means available to discover due to incarceration. As an example, inmates first learned of the First Step Act from attorneys e-mail-only legal bulletins. The FBOP has a vested interest in preventing inmates from learning how to legally and legitimately recover their lost freedom.

24

74. In **Gatch**, 2013 U.S. Dist. LEXIS 171940, the Plaintiff was dismissed for failure to "point to specific examples of other prisoners who have a history of attempting to exchange sexually explicit photographs with minors over the internet..." or attempting to arrange a meeting with a minor for illicit activity, yet have been allowed to use TRULINCS." The Plaintiff asserts in the instant case that it should not be necessary to point to specific examples because exposure of individuals who have sex offense violations are inherently put in harms way if named. Also in **Gatch**, the court found that:

> "using computers/email/internet or other communications methods as a conduit for committing illegal activities [are] examples of criminal history that could justify a TRULINCS restriction." Cited from: **Green**, 2012 U.S. Dist. LEXIS 76338, 2012 WL 1982249, at *3; **Hoffman**, 2013 U.S. Dist. LEXIS 144519, 2013 WL 5529612, at *4; P5265.13 § 3A, p. 3."

However, this is no longer current policy, and it was outdated when it was used to deny access to **Larson** (supra) in 2015, due to Assistant Director Kane's edict dated September 13, 2010.

## CONCLUSION

75. The courts have, in the past, refused to order the FBOP to grant TRULINCS public messaging access to plaintiffs by deferring authority to grant access exclusively to FBOP staff, stating it is a "privilege", and not an absolute right guaranteed by the Constitution. The **Packingham** (supra) court challenged that access to certain parts of the Internet were off-limits to convicted felons, but some of the findings also extended First Amendment protections to convicted felons regarding the Internet. The Plaintiff seeks to challenge his denial of TRULINCS public messaging access because of paradigm shifts in the contemporary methods used to communicate have much-changed over the last decade, and indeed, since the FBOP installed computer terminals permitting inmates to have a speedy, economical means to communicate with others outside the confines of prison walls.

25

76. The reasons for denial of service are inapplicable, given the current FBOP policy (4500.12). PS 5265.13 et. seq. are no longer applicable. Manpower to police the system is no longer a concern because it is performed electronically/automatically, but most of all, PS 4500.12 no longer bars sex offender from access to TRULINCS public messaging **unless** e-mail or text messaging to contact a victim for the purpose of committing offensive conduct as part of an inmate's instant offense. In the absence of such an act, no "aggravating circumstances" overcome the policy published by the FBOP to disallow access. The denial of access to the Plaintiff is both arbitrary and capricious.

77. Policy 4500.12 clearly grants a path to access to inmates who did not use e-mail or text messaging to solicit a minor for the purpose of committing offensive conduct. Further, policy 4500.12 protects inmates accused of a sex offense from capricious, arbitrary denial of access.

78. Denying the Plaintiff access violates his right to equal treatment and protection of law, access to the courts, and his right to freely communicate with persons outside of prison, and violates the Administrative Procedures Act because the published Agency policy and procedure is not being followed by the named defendants.

79. Although the Plaintiff does not seek punitive or compensatory damages, he does seek reimbursement of costs associated with this action, as well as injunctive relief.

| | |
|---|---|
| Webster D. Williams, III | 10/23/19 |
| | Date |

Notary Public

NOTARY PUBLIC

8/17/2021
My commission expires

## AFFIDAVIT

The Plaintiff in this case affirms that all information in the case motioned: CIVIL RIGHTS COMPLAINT PURSUANT TO 28 USC § 1331; THE ADMINISTRATIVE PROCEDURES ACT 5 USCS §§ 702-706; THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT; THE RIGHT OF ACCESS TO THE COURTS GUARANTEED BY THE SIXTH AMENDMENT; THE RIGHT TO COMMUNICATE WITH THE PUBLIC GUARANTEED BY THE FIRST AMENDMENT; is correct and true to the best of his ability, as well as the enclosures submitted as discovery with the filing of this case, which includes the Plaintiff's FBOP forms and FBOP responses to those forms: COP-OUT; BP-8; BP-9; BP-10; and BP-11.

The Plaintiff avers that he has completed the Administrative Remedy Process in an honest and forthright manner, and that he is being harmed by the FBOP's denial to grant him TRULINCS public messaging access.

The Plaintiff believes that FBOP policy statement 4500.12 governs his denial and/or approval of his TRULINCS public messaging access, and that the Plaintiff believes that FBOP staff are not following their own published policy, which would lead a person of ordinary reason to believe that the Plaintiff should not be denied access.

The Plaintiff believes that the court should order the BOP to grant him access without delay pursuant to their policy.

_____          Oct. 23, 2019
Webster D. Wlliams, III                  _____
                                         Date

# C E R T I F I C A T E   O F   S E R V I C E

I certify that on October 24, 2019 the enclosed documents entitled

CIVIL RIGHTS COMPLAINT PURSUANT TO 28 USC § 1331

was served upon the following person(s) at the address(es) shown, pertaining to:

Clerk of Court, 4th District RE: (_) Case No._____
P.O. Box 25670
Raleigh, NC 27611

(_) Letter dated _____

(X) Other New motion/complaint

The aforementioned document was sent via:

(X) U.S. Mail First Class      (_) U.S. Mail, Certified

(_) Hand Delivered             No. _____

(_) FAXed to # _____ (_) U.S. Mail, Return Receipt

I certify that this document was placed in the inmate mailbox in Mailroom_____, at the Low Security Correctional Institute, Butner Complex, Butner, N.C., at 7:30AM____ PM – AM, on the date Oct. 24, 2019__. Please note that inmate mail is )NOT( picked up on Friday or Saturday evenings.

**PURSUANT TO THE PRISON MAILBOX RULE:**

The Prison Mailbox Rule, whereby date on which prisoner transmits documents to prison authorities is considered actual filing date... as neither 19 USCS § 1608 or 1609, nor regulations require actual receipt. **Longette v. Krusing**, 322 F.3d 758 (CA3 PA, 2003).

I certify under penalty of perjury that the aforementioned is true and correct, pursuant to 28 USCS § 1746.

Printed Name __Webster Douglas Williams, III__

Date __October 24, 2019_____

Signature _____